UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES SALMON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-1349** |
| **WAFFLE HOUSE, INC.** | **SECTION: "S" (1)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that plaintiff's *Daubert* Motion to Exclude the Testimony of Leonard Quick (Rec. Doc. 56) is **GRANTED**.

BACKGROUND

Plaintiff filed suit against defendant, Waffle House, Inc. ("Waffle House"), for injuries allegedly sustained in a slip and fall at the Waffle House located at 43145 South Airport Road, in Hammond, Louisiana. The complaint alleges that on September 28, 2018, plaintiff was a patron at the Hammond Waffle House eating a meal with his friend and witness, Pete Clark. The pair sat down, ordered, received, and ate their food, and then got refills on their coffee. Plaintiff then rose to leave the table to use the restroom. According to plaintiff and Clark, when plaintiff attempted to get up, he slipped on some food and/or a fork that were both on the ground, under the table. Plaintiff alleges that he was unable to see the food and/or fork prior to attempting to get up, and that they had to have been underneath the table prior to the arrival of plaintiff and Clark. Clark testified that the slip hazard was under the table, not out in the open. As a result of this slip and fall, plaintiff alleges that he sustained severe and disabling injuries.

Defendant has retained an expert, Leonard Quick, to testify regarding causation of the

incident. Quick's report opines that there is no evidence that a hazard was present, that if one existed it was open and obvious, and that plaintiff was negligent in grabbing hold of a swivel chair to stand up, which caused or contributed to his fall.

Plaintiff has moved to exclude Quick under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dowell Pharm., Inc.</u>, 509 U.S. 579 (1993). Plaintiff argues that Quick is not qualified to testify on the cause or mechanics of plaintiff's fall or the visibility of foreign substances on the floor. Plaintiff further argues that Quick's opinion on the cause of Salmon's fall and his opinion that the hazard was open and obvious, are based on false premises, lack scientific underpinning, and are not helpful to the trier of fact.

## DISCUSSION

*Applicable Law*

Federal Rule of Evidence 702 provides that for expert testimony to be admissible, "(1) the testimony [must be] based upon sufficient facts or data, (2) ... the product of reliable principles and methods, and (3) the witness [must have] applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. This rule requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Daubert</u>, 509 U.S. at 589.

The <u>Daubert</u> relevance inquiry requires that the expert testimony must be relevant not only in the usual sense as required by Federal Rule of Evidence 401, but also that it must fit the facts of the case; that is, it must be shown that it will "assist the trier of fact to understand or determine a fact in issue." <u>Id.</u> at 592. Thus, courts exclude expert testimony on issues that the

2

jury can "adeptly assess ... using only their common experience and knowledge." Peters v. Five Star Marine Serv., 898 F.2d 448, 450 (5th Cir. 1990).

The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. See Daubert, 509 U.S. at 592-93. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).

*Application to facts of case*

While Quick has been accepted as an expert in numerous cases for his forensic engineering expertise, plaintiff challenges his expertise in this issues in this case, contending that his resume does not reflect formal training or certification in accident reconstruction, the bodily mechanics of a slip and fall, human factors, or restaurant design and furnishings. The court pretermits the issue of Quick's specific qualifications, however, because independent of Quick's qualifications, the court finds that his testimony in this case is not helpful to the trier of fact.

In this case, Quick's proffered testimony concerns the mechanics of Salmon's fall. His report reflects that Salmon fell because he grabbed a swiveling barstool, and he was negligent in doing so. While Quick's report reflects that he consulted restaurant drawings, deposition testimony, and his own post-accident measurements to reach his conclusions, he relied principally on (and with respect to the swiveling barstool, exclusively on) the video footage of the incident. His report states:

> The forensic evidence in this case, including evidence documented on the security camera video footage from the date of the incident, shows the positional orientation of plaintiff throughout his attempted maneuver to stand from the

> seated position while exiting from the table. Given his selected grasp and "hand-hold" on the adjacent non-stable barstool back as part of plaintiff's selected maneuver to stand, such physical orientation and maneuver is such that it is more probable than not that the right foot of the plaintiff was outside the projected end of the table on the floor . . . .

Quick Report, Rec. Doc. 56-2, p. 5, ¶4. "[P]laintiff was negligent in grasping the bars of the stool back in the maneuver to stand from the seat of the table." Id. at p. 6, ¶ 6. Thus, Quick opined that Salmon selected the maneuver of grasping the barstool if an effort to stand, and he was negligent in doing so.

At the Daubert hearing in this matter, the court questioned Quick regarding how his forensic engineering expertise qualified him to express this opinion:

> THE COURT: Would you let me just ask you one a question, would you to go your conclusions on page 5 and tell me what part of your report encompasses the discipline that you just described?
>
> THE WITNESS: Yes, ma'am. That would be generally in conclusion Number 4 [excerpted above], Your Honor, which is a summary of that topic.
>
> THE COURT: Where does your specialized knowledge come in to your conclusion?
>
> THE WITNESS: Yes, Your Honor, it's for -- it's for at this point 37, 38 years of experience forensic engineering practice and in thousands of cases in performing testing and studies specific body mechanics for slip and fall and trip and fall actions.
>
> THE COURT: In Number 4 it refers to what you're doing is making a factual determination like the selected grasp and hand hold. I mean, just that one statement, just that one statement I would have to disagree with as a person who has looked at the same video that you looked at, because he obviously grabbed it in an attempt to break his fall. So --
>
> THE WITNESS: Yes, ma'am.

> THE COURT: -- if you are relying on your conclusion that he chose to grasp a handhold, I have a problem.
>
> THE WITNESS: If you go into Number 4, Your Honor, I wasn't emphatic that the -- about the timing of the grasping of the handle of the stool. If Your Honor would look at the – given his selective grasp of the handle on the adjacent nonstable barstool back as a part of plaintiff's selective maneuver to stand. So, in the part of his maneuver to stand he ultimately does grab (speaking simultaneously) --
>
> THE COURT: Okay. Well, the way I see that is not, he wasn't using it to stand, he was using it to break his fall, which had already begun.
>
> THE WITNESS: Yes, ma'am I fully understand that and I agree with you. That's what I'm trying to clarify that. I'm not suggesting the timing of when his hand grabbed it but just to point out the fact that it played a part in his fall when he reached for it because it's a movable stool. It swivels, Your Honor, it's not fixed.

The court finds this testimony contradictory, especially when considered in tandem with the report and the video footage. In addition to the excerpts from the report above, the report states: "It shall be noted significantly, that in the maneuver executed by plaintiff in getting up from the bench seat of the table, he attempted to pull himself up by reaching for and grabbing onto non-stable typical swivel bar stool." Id. p. 7.  The report is unequivocal that Salmon was negligent in grasping the stool in attempting to stand.

On questioning at the Daubert hearing, Quick originally acknowledged that, but stated that that part of the conclusion "wasn't emphatic." He ultimately disavowed the conclusion completely, stating that he agreed with the court. This inconsistent testimony would not be helpful to the fact-finder. Moreover, it is based purely on Quick's review of the video, a task which the jury is capable of undertaking. Watching a video and determining at what point in it an individual falls, and where his hands are placed at the time, "obviously is within the common

5

knowledge of jurors." Kyong Hui Lane v. Target Corp., 2006 WL 870805 at *2 (S.D. Tex. April 3, 2006), citing United States v. Willey, 57 F.3d 1374, 1389 (5th Cir. 1995). The court finds that this testimony is both confusing in its equivocation, and embraces matters within the jury's competence to interpret. It will not assist the finder of fact.

Quick also opined that "no evidence exists that a fork, syrup or piece of toast were left or present on the floor beneath the table by a Waffle House employee before and as of the time of the subject incident." Id. at p. 6, ¶ 5, and if there was anything on the floor, it was open and obvious. Setting aside the problem that this opinion requires the wholesale rejection of the testimony of Salmon and Pete Clark, and "[c]redibility determinations, of course, fall within the jury's province," Skidmore v. Precision Printing & Pkg., Inc., 188 F.3d 606, 618 (5th Cir. 1999), whether a hazard on a floor is "open and obvious" is by definition within the province of a juror without any scientific background. Quick's actual testimony here, however, is not that a hazard in a specific spot was open and obvious, but rather, that the fork could not have been in the spot in which Salmon and Clark testified it was located.

On this record, the court finds that its role as gatekeeper requires it to exclude the testimony of Quick. The testimony addresses matters that do no require specialized knowledge, and, because it is premised on an assumption that is inconsistent with the video evidence, which the jury is competent to evaluate and upon which the witness equivocated during the Daubert hearing, it is likely to confuse, rather than assist, the jury. Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's *Daubert* **Motion to Exclude the Testimony**

**of Leonard Quick** (Rec. Doc. 56) is **GRANTED**.

New Orleans, Louisiana, this _17th_ day of March, 2021.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**